1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9  ALBERTO TORRES,

10               Petitioner,                    No.  CIV S-09-2150 JAM GGH P

11       vs.

12  VINCE CULLEN, Warden[1],

13               Respondent.                    ORDER AND

14                                              FINDINGS AND RECOMMENDATIONS

15  _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for habeas corpus

17  pursuant to 28 U.S.C. § 2254.  This action is proceeding on the original petition filed August 4,

18  2009.  Petitioner challenges his 1999 conviction of second degree murder, attempted involuntary

19  manslaughter, and firearm enhancement in the Sacramento County Superior Court, for which he

20  received a sentence of forty years to life in state prison.  Petitioner challenges his conviction and

21

22              [1]   In the instant action, petitioner named John Havilland as respondent.  Respondent
   requests the submission of Vince Cullen, the current Warden of San Quentin State Prison, as the
23  correct respondent in this matter.  See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th
   Cir. 1994) ("A petitioner for habeas corpus relief must name the state officer having custody of
24  him or her as the respondent to the petition."); Rule 2(a), 28 U.S.C. foll. § 2254); Cal. Code
   Regs. tit. 15, § 3379(a)(9)(I) (2009) (providing that an inmate transferred to an out-of-state
25  facility remains under the legal custody of the CDCR).  Accordingly, the court now substitutes in
   the correct respondent.
26

                                              1

1  sentence on various grounds, including <u>Cunningham</u> /<u>Apprendi</u> error in imposing an upper term

2  sentence, cumulative error at petitioner's trial, and ineffective assistance of counsel.  (Petition

3  (hereinafter, "Ptn.") at 7-22.)  Pending before the court is respondent's April 23, 2010 motion to

4  dismiss the petition on the ground that it is time-barred.  After carefully reviewing the record and

5  the applicable law, the undersigned concludes that the motion should be granted.

6                                              BACKGROUND

7          In 1999, following a jury trial in the Sacramento County Superior Court, petitioner

8  was convicted of second degree murder, attempted involuntary manslaughter, and multiple

9  enhancements.  After granting the prosecutor's motion to dismiss the manslaughter count and its

10  accompanying enhancement in the interests of justice, the court on November 19, 1999 sentenced

11  petitioner to a state prison term of 15 years to life for second degree murder and a consecutive

12  term of 25 years to life for firearm use, for a total sentence of forty years to life.  (Resp't's Lod.

13  Doc. 1; Resp't's Lod. Doc. 2 at 1-2.)

14          On October 15, 2001, the Court of Appeal, Third Appellate District, affirmed the

15  judgment.  (Resp't's Lod. Doc. 2.)

16          Nearly eight years later, on August 4, 2009, petitioner filed a habeas petition for

17  review of his judgment and sentence in the California Supreme Court.  (<u>See</u> Resp't's Lod. Doc.

18  4.)  The court denied review on February 3, 2010, citing <u>In re Robbins</u>, 18 Cal. 4th 770, 780

19  (1998), indicating that the petition was untimely under state law. (Resp't's Lod. Doc. 5.)

20          Petitioner also filed the instant federal action on August 4, 2009.  Respondent

21  moved to dismiss the petition on timeliness grounds on May 28, 2010.  Petitioner filed an

22  opposition to the motion on August 4, 2010, to which respondent filed a reply on August 18,

23  2010.  Petitioner filed a motion to strike respondent's reply on November 4, 2010.

24                                              ANALYSIS

25          The statute of limitations for federal habeas corpus petitions is set forth in 28

26  U.S.C. § 2244(d)(1):

                                                    2

1    A 1-year period of limitation shall apply to an application for a writ
     of habeas corpus by a person in custody pursuant to the judgment
2    of a State court.  The limitation period shall run from the latest of–

3    (A) the date on which the judgment became final by the conclusion
     of direct review or the expiration of the time for seeking such
4    review;

5    (B) the date on which the impediment to filing an application
     created by State action in violation of the Constitution or laws of
6    the United States is removed, if the applicant was prevented from
     filing by such State action;
7
     (C) the date on which the constitutional right asserted was initially
8    recognized by the Supreme Court, if the right has been newly
     recognized by the Supreme Court and made retroactively
9    applicable to cases on collateral review; or

10   (D) the date on which the factual predicate of the claim or claims
     presented could have been discovered through the exercise of due
11   diligence.

12        Here, the judgment became final for purposes of section 2244(d)(1)(A) when the

13   time for filing a petition for supreme court review expired, forty days after the court of appeal's

14   decision, on November 24, 2001.  Cal. Rule of Court 8.264(b)(1) (court of appeal decision is

15   final 30 days after filing); 8.500(e)(1) (petition for review must be served and filed within 10

16   days after court of appeal judgment is final).  As respondent observes, the AEDPA statute began

17   to run the following day, on November 25, 2001.  Patterson v. Stuart, 251 F.3d 1243, 1246 (9th

18   Cir. 2001).  Thus, petitioner had until November 24, 2002 to file a timely federal petition.

19        Because petitioner filed the instant petition (Doc. No. 1) more than six years after

20   that date, on July 6, 2009 (per the mailbox rule)[2], the instant action is not timely unless petitioner

21

22        [2]  The "mailbox rule" applies to applications to both the California and federal courts for
     purposes of calculating tolling of the statute of limitations under AEDPA. Dils v. Small, 260
23   F.3d 984, 986 (9th Cir. 2001); Anthony v. Cambra, 236 F.3d 568, 574-75 (9th Cir. 2000), cert.
     denied, 533 U.S. 941, 121 S.Ct. 2576 (2001). Since the instant petition is dated July 9, 2009, the
24   court uses that date as the filing date, rather than the date the petition was actually filed by the
     Clerk of Court.  See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per
25   curiam) ("Absent evidence to the contrary in the form of prison logs or other records, we will
     assume that [petitioner's] motion was delivered to prison authorities the day he signed it....");
26   Marsh v. Soares, 223 F.3d 1217, 1218 n. 1 (10th Cir. 2000) ("Liberal application of the mailbox

1   is entitled to statutory or equitable tolling.

2   Statutory Tolling

3           The time during which a properly filed application for state post-conviction or

4   other collateral review with respect to the pertinent judgment is pending shall not be counted

5   toward any period of limitation under this subsection.  28 U.S.C. § 2244(d)(2).  However, section

6   2244(d)(2) can only pause a clock not yet fully run; it cannot "revive" the limitations period once

7   it has run (i.e., restart the clock to zero).  Thus, a state court habeas petition filed beyond the

8   expiration of AEDPA's statute of limitations does not toll the limitations period under section

9   2244(d)(2).  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jiminez v. Rice, 276

10  F.3d 478, 482 (9th Cir. 2001).

11          Here, the judgment became final on November 24, 2001.  Petitioner filed no post-

12  conviction collateral action within the one-year limitations period.  His sole collateral challenge

13  to the conviction in state court was filed in August 2009 – technically, after the filing of the

14  instant petition, which per the mailbox rule is considered filed as of July 6, 2009.  Thus, statutory

15  tolling cannot serve to make the instant petition timely.

16  Equitable Tolling

17          The remaining question is whether petitioner's six-plus year delay in filing the

18  instant petition was tolled by equitable factors.  In Calderon v. U.S. District Court (Beeler), 128

19  F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds, Calderon v. U.S. District Court for

20  Cent. Dist. of CA. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), itself abrogated by Woodford

21  v. Garceau, 538 U.S.202, 123 S. Ct. 1398 (2003), the Ninth Circuit found that the statute of

22  limitations could be equitably tolled if extraordinary circumstances beyond a prisoner's control

23  made it impossible to file the petition on time.   "In addition, '[w]hen external forces, rather than

24

25  _____

26  rule ... causes us to treat the petition as placed in the hands of prison authorities on the same day
    it was signed." (citation omitted)), cert. denied, 531 U.S. 1194, 121 S.Ct. 1195 (2001).

1  a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may

2  be appropriate.'" Lott v. Mueller**,** 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty,

3  187 F.3d 1104, 1107 (9th Cir. 1999).

4  Equitable tolling will not be available in most cases because tolling should only

5  be granted if extraordinary circumstances beyond a prisoner's control make it impossible for him

6  to file a petition on time.  Beeler, 128 F.3d at 1288-89.  As held in Beeler,  "[w]e have no doubt

7  that district judges will take seriously Congress's desire to accelerate the federal habeas process,

8  and will only authorize extensions when this high hurdle is surmounted." 128 F.3d at 1289.

9  "Mere excusable neglect" is insufficient as an extraordinary circumstance.  Miller v. New Jersey

10  Dept. of Corrections, 145 F.3d 616, 619 (3rd Cir. 1998).  Moreover, ignorance of the law does

11  not constitute such extraordinary circumstances.  See Hughes v. Idaho State Bd. of Corrections,

12  800 F.2d 905, 909 (9th Cir. 1986).

13  A habeas petitioner bears the burden of proving that equitable tolling should apply

14  to avoid dismissal of an untimely petition.  Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir.

15  2002).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two

16  elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

17  circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814

18  (2005); Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir.  2009).   "The petitioner must additionally

19  show that 'the extraordinary circumstances were the cause of his untimeliness'...and that the

20  'extraordinary circumstances ma[de] it impossible to file a petition on time.'" Ramirez, supra,

21  (internal citations omitted).  "Equitable tolling is unavailable in most cases," and is only

22  appropriate "if extraordinary circumstances beyond a prisoner's control make it impossible to file

23  a petition on time."  Miranda, supra, at 1066 (internal quotations/citations omitted [emphasis

24  added in Miranda]).  A petitioner must reach a "very high" threshold "to trigger equitable tolling

25  [under AEDPA]...lest the exceptions swallow the rule."  Id.

26  Lack of Spanish-Language Legal Materials

1    Petitioner claims he is entitled to equitable tolling "due to lack of any [S]panish

2  language law books and/or notices in [S]panish about the one year statute of limitations." (Opp.

3  to Motion to Dismiss (hereinafter, "Opp.") at 1.) The court assumes from this one-sentence

4  argument that petitioner is a native Spanish speaker who is asserting, in effect, that his difficulty

5  understanding the English-only legal materials in the prison library prevented him from timely

6  filing the instant petition. Petitioner's argument is untenable for three reasons.

7    First, petitioner has provided no evidence of his claim that the prison library in

8  fact lacked Spanish-language materials on federal habeas procedures. He has not provided a

9  declaration from the librarian confirming the lack of such materials, nor even a list of the

10  AEDPA-related materials available in the library to show that Spanish-language materials are not

11  included. In short, he has not even attempted to document the "extraordinary circumstance" of

12  which he complains. See Pace, supra, 544 U.S. at 418 (litigant must show "some extraordinary

13  circumstance stood in his way").

14    Second, even assuming petition is correct about the lack of translated legal

15  references, petitioner bears the burden to demonstrate that he diligently pursued his claims during

16  the limitation period, including by attempting to overcome his language barrier. As the Ninth

17  Circuit explained in Mendoza v. Carey, a non-English speaking petitioner who desires equitable

18  tolling of the AEDPA time limitation must show "diligent efforts" to procure legal materials in

19  his own language or otherwise seek translation from any source. 449 F.3d 1065, 1070 (9th Cir.

20  2006). Likewise, in Nguyen v. Lamarque, the Ninth Circuit held that equitable tolling was

21  inappropriate where a petitioner failed to show that he pursued claims diligently despite his

22  language barrier and nothing existed in the record to demonstrate diligence. 203 Fed.Appx. 762,

23  763-64 (9th Cir. 2006).

24    Similarly here, the court cannot discern from the record, as was petitioner's burden,

25  whether petitioner exercised due diligence, such as searching for Spanish language legal materials

26  or seeking a Spanish interpreter or translator. See Perez v. Marshall, 2009 WL 4507729 at *6

1    (S.D.Cal. 2009) (petitioner must demonstrate that he was exercising diligence in search of

2    Spanish language materials and an interpreter during the relevant time period).  Indeed,

3    petitioner's filings in this case suggest that he is able to read and write English at a level sufficient

4    to understand and comply with legal directives.  (See, e.g., Doc. 1 (habeas petition filed pro se, in

5    English); Doc. 4 (consent to jurisdiction of magistrate judge, pursuant to court order); Doc. 10

6    (response to order to show cause).)  While petitioner may have had assistance in the instant

7    litigation, the record also includes a copy of an April 2006 handwritten letter from petitioner to his

8    trial attorney which demonstrates proficiency in reading and writing English.  (Resp't's Lod. Doc.

9    6; see also Resp't's Lod. Doc. 11 (transcript of petitioner's May 1999 interview with law

10   enforcement, demonstrating proficiency in spoken English)).

11          Third, petitioner establishes no causal connection between the lack of Spanish-

12   language legal materials and his failure to timely file a federal habeas petition.  See Spitsyn v.

13   Moore, 345 F.3d 796, 799 (9th Cir. 2003) (noting that equitable tolling is not available unless the

14   petitioner shows that extraordinary circumstances actually caused his untimeliness).  Given the

15   lack of evidence on causation and petitioner's apparent ability to read, write, and speak English at

16   a proficient level, the court has no reason to believe that a lack of Spanish-language legal

17   materials prevented him from filing the instant petition for more than six years past the deadline.

18          Because petitioner has not met the "very high threshold" of establishing that

19   extraordinary circumstances beyond his control were the cause of his untimeliness, the court finds

20   no equitable tolling on this basis.  Nor given this record is an evidentiary hearing required.  See

21   Schiriro v. Lundgren, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940 (2007).

22   Ineffective Assistance of Counsel

23          Petitioner next claims he is entitled to equitable tolling because he lacked effective

24   assistance of counsel.  Specifically, he claims that both trial and appellate counsel failed to

25   provide him with client files; that trial counsel failed to sufficiently investigate defenses to his

26   /////

                                                    7

1    underlying case; and that appellate counsel abandoned him to "whatever was available in prison"

2    despite having been retained and paid $30,0000.  (Opp. at 1-2; Ptn. at 11-18.)

3           In Spitsyn, supra, the Ninth Circuit noted that "ordinary attorney negligence will

4    not justify equitable tolling"; however," where an attorney's misconduct is sufficiently egregious,

5    it may constitute an "extraordinary circumstance" warranting equitable tolling of AEDPA's statute

6    of limitations."  345 F.3d at 800, citing Ford v. Hubbard, 330 F.3d 1086, 1106 (9th Cir. 2003)

7    ("there are instances in which an attorney's failure to take necessary steps to protect his client's

8    interests is so egregious and atypical that the court may deem equitable tolling appropriate").  In

9    Spitsyn, petitioner's mother hired an attorney nearly a year before the AEDPA deadline to file a

10   habeas petition on her son's behalf.  Despite numerous requests by petitioner and his mother, the

11   attorney never filed the petition and was ultimately reprimanded by the state bar for failing to act

12   diligently.  Proceeding pro se, petitioner filed his petition 226 days after the AEDPA deadline.

13   The Ninth Circuit concluded that the attorney's conduct was sufficiently egregious to warrant

14   equitable tolling of the statute for some period of time, and remanded for proceedings to

15   determine whether petitioner had exercised reasonable diligence in filing his petition.  345 F.3d

16   796.

17          Here, unlike in Spitsyn, there is no apparent causal relationship between the actions

18   of either one of petitioner's attorneys and his failure to timely file a federal habeas petition.  The

19   record indicates as follows: In December 1999, petitioner entered into a contract with attorney

20   Peter Kmeto "for the purpose of evaluating and drafting an appeal from" petitioner's criminal

21   conviction.  (Resp't's Lod. Doc. 13.)

22          In early 2007, petitioner contacted both his trial and appellate attorneys seeking

23   copies of his client file.  On January 19, 2007, petitioner wrote to his trial attorney Dwight Samuel

24   stating that, as  a "former client," he would like a complete copy of his case file.  (Resp't's Lod.

25   Doc. 8.)  In a letter dated March 27, 2007, Mr. Samuel stated that he had looked for petitioner's

26   file but did not have it, and suggested that the file might be with petitioner's appellate attorney.

1   (Resp't Lod. Doc. 10.)  Mr. Samuel stated that he did not know that attorney's name and

2   address, but "[i]f you are aware of it please advise me and my office will undertake to get the file

3   back to you as timely as possible."

4           The record suggests that petitioner also wrote to Mr. Kmeto in early 2007

5   requesting his client file, as in a February 24, 2007 letter, Mr. Kmeto responded:

6             [I]n 2002, you requested that your file, in its entirety, be released to
            your wife, Ms. Godinez.  In compliance with your wish, the file, in
7            its entirety, was delivered to your nephew, an investigator with the
            Sacramento County Public Defender's Office (who acted as the
8            family liaison).

9   (Resp't Lod. Doc. 14.)

10          On February 28, 2007, petitioner filed a complaint about Mr. Kmeto with the State

11   Bar of California, claiming that "he was paid over 20K, and he filed the opening brief, and then

12   'dumped' me and took the rest of the money in the trust account[.] He refused to pursue my

13   appeal to the US Supreme Court or to exhaust state remedies, thereby causing my appeal to be

14   untimely[.]."  (Resp't Lod. Doc. 9.)

15          Having reviewed these documents, the court finds no evidence of any "egregious"

16   conduct that actually caused petitioner to delay filing the instant petition more than six years past

17   the deadline.  At most, they evidence a contract dispute between petitioner and his appellate

18   attorney about the scope of Mr. Kmeto's representation and/or the amount of his payment.  As to

19   the former, nothing in the record suggests that Mr. Kmeto was hired to represent petitioner in

20   habeas proceedings rather than direct appeal.  Thus, whatever dispute exists concerning Mr.

21   Kmeto's representation or fee does not bear on the timeliness of the instant petition.

22          Petitioner also attributes his nearly seven-year delay in filing to the fact that he

23   lacked access to his case file during the relevant time period.   But the record does not bear this

24   out.  Rather, it indicates that Mr. Kmeto provided petitioner's case file to petitioner's nephew (a

25   "family liaison") in 2002 and that petitioner made no further requests about it until early 2007.

26   Petitioner does not state whether he received his case file in 2002 via his nephew, nor if so, why

he did not file a timely petition by November 24, 2002.  Nor does he explain why, if he did <u>not</u> receive his file in 2002, he waited until 2007 to request it from his lawyers.  While in some circumstances, an inmate's lack of access to his case file may warrant equitable tolling of the AEDPA deadline (<u>Lott v. Mueller</u>, 304 F.3d 918, 924-925 (9th Cir. 2002) (describing "unusual facts" that satisfied the requirement for equitable tolling)), petitioner has not made the necessary showing of diligence, nor the required showing of causation.  To the extent that petitioner argues that he received ineffective assistance of counsel at the trial and appellate levels, these arguments concern the merits of his claim and do not show a reason to equitably toll the limitations period.

Because petitioner has not met the "very high threshold" for statutory tolling, his petition is untimely by a span of several years.

Accordingly, IT IS ORDERED that:

1. The Clerk of Court is to substitute Vince Cullen, Warden, as respondent in the docket of this case; and

2. Petitioner's motion to strike respondent's reply (Doc. No. 25) is denied.

It is hereby RECOMMENDED that respondent's motion to dismiss (Doc. No. 17) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are

/////

/////

/////

/////

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: 01/04/2011

/s/ Gregory G. Hollows

4
_____

5                                                GREGORY G. HOLLOWS
                                                 UNITED STATES MAGISTRATE JUDGE

GGH:0014

6   torr2150.mtd

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

11